# EXHIBIT A

Filed
D.C. Superior Court
07/19/2016 16:52PM
Clerk of the Court

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

RECEIVED
AMTRAK

JUL 29 2016

**ELEANOR D. ACHESON**
EXECUTIVE VICE PRESIDENT,
CHIEF LEGAL OFFICER,
GENERAL COUNSEL & CORPORATE SECRETARY

Juanita Thorne
_____
                    Plaintiff

vs.

National Railroad Passenger Corporation,
_____
d/b/a Amtrak
_____
                    Defendant

Case Number   2016 CA 744 B

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Peter C. Cohen
_____
Name of Plaintiff's Attorney
Charlson Bredehoft Cohen & Brown, P.C.
_____
Address
11260 Roger Bacon Drive, Ste. 201
_____
Reston, VA 20191
Telephone  703-318-6800
_____

*Clerk of the Court*

By _____
                    Deputy Clerk

Date _____07/19/2016_____

如需翻译，请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ለማግኘት፣ (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                    CASUM.doc





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                    *SECRETARIO DEL TRIBUNAL*

Nombre del abogado del Demandante

                              Por: _____
Dirección                                        Subsecretario

                              Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오    የአማርኛ ትርጉም አማካሪነት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

                                                              CASUM.doc

Filed
D.C. Superior Court
02/02/2016 12:55PM
Clerk of the Court

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| JUANITA THORNE )<br>5826 Wessex Lane )<br>Alexandria, Virginia 22310 )<br> )<br> Plaintiff, )<br> )<br> v. )<br> )<br>NATIONAL RAILROAD PASSENGER )<br> CORPORATION d/b/a AMTRAK )<br>60 Massachusetts Avenue, NE )<br>Washington, DC 20002 )<br> )<br>Serve:  John Carten )<br>        60 Massachusetts Avenue, NE )<br>        Washington, DC 20002 )<br> )<br>        Defendant. )<br>——————————————————) | Civil Action No. 2016 CA 000744 B<br>_____ |

### COMPLAINT

COMES NOW THE PLAINTIFF, JUANITA THORNE, by counsel, and moves this

Court for judgment in her favor and against the Defendant, NATIONAL RAILROAD

PASSENGER CORPORATION, D/B/A AMTRAK, and in support thereof, alleges and avers as

follows:

### NATURE OF ACTION

1.      This is a civil action alleging discrimination in the course of employment based

on race and gender and retaliation in violation of the District of Columbia Human Rights Act,

D.C. Code § 2-1401.01 *et seq.*

**PARTIES**

2.      Plaintiff Juanita Thorne ("Ms. Thorne") is a resident of the Commonwealth of

Virginia.  At all times relevant hereto, Ms. Thorne was employed by the National Railroad

Passenger Corporation in the District of Columbia.

3.      National Railroad Passenger Corporation (d/b/a Amtrak)("Amtrak") is a

corporation registered to do business in the District of Columbia.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over Ms. Thorne's claims under the D.C. Human

Rights Act, D.C. Code § 2-1401.01 *et seq.*

5.      The amount in controversy exceeds the jurisdictional minimum amount for this

Court.

6.      Amtrak is an "employer" within the meaning of D.C. Code § 2-1401.02(10).

7.      Amtrak is present in and conducts business in the District of Columbia and the acts

complained of herein occurred in the District of Columbia.  Amtrak is subject to the personal

jurisdiction of this Court.

8.      At all times relevant hereto, Amtrak was Ms. Thorne's "employer" within the

meaning of D.C. Code § 2-1401.02(10).

9.      The unlawful employment practices in this case were committed in the District of

Columbia, employment records relevant to those practices are administered and maintained in the

District of Columbia, and Ms. Thorne would have continued to work in the District of Columbia but

for Amtrak's unlawful practices.

10.     Jurisdiction and venue are proper in this Court.

## BACKGROUND

11.     Ms. Thorne is Korean and African-American.

12.     She is 43 years old.

13.     Ms. Thorne began working for Amtrak on March 25, 2013 as a Human Capital Business Partner ("HCBP") at a D2 level (Director Level-2).

14.     Ms. Thorne's starting salary was One Hundred Forty Three Thousand and no/100 Dollars ($143,000.00) per year.

15.     In mid to late August 2013, Ms. Thorne met with her then-supervisor, Scot Naparstek ("Mr. Naparstek"), Director, Human Capital Business Partners, Employee & Labor Relations.  During this meeting, Mr. Naparstek told Ms. Thorne that he was concerned about how Ms. Thorne's boldness was being perceived and asked her to "tone it down."  He said that although he hired Ms. Thorne because she was bold and because he said that Amtrak needed someone like her, he told her that "they may not be ready for it right now."  Mr. Naparstek said that he wanted to tell Ms. Thorne so that she would have time to work on this before performance reviews.  Ms. Thorne immediately agreed to work on this although Ms. Thorne understood Mr. Naparstek's comment to be insulting because males and Caucasian males often spoke boldly but were not disciplined or asked to correct this behavior.

16.     Ms. Thorne worked on her bold way of speaking and contacted a few of her leaders to get some mentoring feedback from them to help her.

17.     In October 2013, Mr. Naparstek gave Ms. Thorne a performance review rating of "1" (out of 4), the lowest possible score.  Mr. Naparstek told Ms. Thorne that her review "was the hardest for [him] to write" and told Ms. Thorne, "Based on your performance you met all of your goals but because of business behaviors, I am giving you a one."

18.     Ms. Thorne questioned Mr. Naparstek and pointed out that she had made immediate changes to her behavior and sought input from several of her business leaders. Mr. Naparstek said that he was aware of this and congratulated her on the changes, saying that he had noticed them, but was still going to give Ms. Thorne a rating of "1."

19.     Ms. Thorne said, "So let me understand you correctly: you hired me because I'm bold and not afraid to say things that need to be said...you told me to correct something so I did, immediately. I even reached out to mentors. You've stated in this review it's not about my performance but you are giving me a one. I don't understand." Mr. Naparstek merely responded, "Yes."

20.     Amtrak did not have an official appeal process for appealing performance review ratings. However, Ms. Thorne did go back to talk to Mr. Naparstek about her rating, but he refused to change her rating. Ms. Thorne was advised by Larry Norman, the Director of Capital Services, to leave the issue alone.

21.     In November 2013, Ms. Thorne was placed on a Performance Improvement Plan ("PIP"), per Amtrak's standard policy for any employees who received a "1" rating in performance reviews. However, instead of the typical 90-day PIP period, Ms. Thorne was placed on a PIP for six months.

22.     Since Mr. Naparstek had been promoted and would no longer supervise Ms. Thorne, he assured Ms. Thorne that he would tell his replacement that Ms. Thorne's PIP had no relation to her performance and was merely based on business behaviors.

23.     Ms. Thorne asked if Dawn Marcelle ("Ms. Marcelle"), Leader of Employee Relations, could manage her PIP. Mr. Naparstek agreed, and as a result, Ms. Thorne and Ms. Marcelle had bi-weekly meetings.

24.     In April or May 2014, Ms. Thorne spoke to Ms. Marcelle about the end of her PIP and wanting to make sure that she was successful.  Ms. Marcelle said that she believed that Ms. Thorne had successfully completed the PIP.  Ms. Marcelle said that she and Ms. Thorne would need to meet with Barry Melnkovic ("Mr. Melnkovic"), Chief Human Capital Officer, to check in regarding the successful completion of Ms. Thorne's PIP.

25.     During this meeting, Mr. Melnkovic stated that he had "lost faith in [Ms. Thorne's] ability to act as a Human Capital Business Partner" but that Ms. Marcelle believed that Ms. Thorne brought value to the organization and wanted Ms. Thorne to come to her group.

26.     Ms. Thorne questioned Mr. Melnkovic about his statement, since no one had ever questioned her performance during her time at Amtrak and she had not been given any negative feedback about her performance.  She asked Mr. Melnkovic to help her understand.  Mr. Melnkovic said that he was not ready to do so at that point and that Ms. Thorne should just understand that he had lost faith in her in her role.  No further details or explanations were ever offered.

27.     Mr. Melnkovic told Ms. Thorne that she could move to Ms. Marcelle's group but that her salary would need to "come in line" with that of other Employee Relations Officers.  Ms. Thorne knew that the new salary would be about $80,000, or 45% less than her salary as a HCBP.  Mr. Melnkovic wanted an answer right away.  Ms. Thorne was expected to provide an answer within 24 hours.

28.     Amtrak's practice with white male employees who were demoted or moved to different positions was to leave their salaries unchanged.

29.     According to Ms. Marcelle, Mr. Melnkovic told her that Eleanor Acheson ("Ms. Acheson"), Chief General Counsel, said that Ms. Thorne was not meeting her expectations.  Ms.

Thorne had a good relationship with Ms. Acheson and asked her about this. Ms. Acheson told Ms. Thorne that she had shared with Mr. Melnkovic the one concern that she had with Ms. Thorne which was the same information that she shared with Mr. Naparstek back in September 2013 and that if Mr. Melnkovic thought that this was based on current information, she would correct him.

30.     Ms. Thorne spoke to Mr. Melnkovic about his conversation with Ms. Acheson and again asked him to share his findings about Ms. Thorne's alleged poor performance with her so she could have the opportunity to learn and improve. Mr. Melnkovic again refused to provide Ms. Thorne with any information. Ms. Thorne explained that she had spoken to all of her business leaders and that none of them had any complaints about her performance. Mr. Melnkovic said, "I cannot help you if they tell you one thing but tell me another" and asked Ms. Thorne if she had made a decision on the demotion. Ms. Thorne said that she needed more time to consider since it would have such a big financial impact.

31.     In contrast to Ms. Thorne's situation, a white man, Adam Rosenberg, who was at the same level as Ms. Thorne, had recently received a "1" rating, had his entire department taken away from him, and been placed on a PIP, yet his pay was *not* affected.

32.     Ms. Thorne brought up Mr. Rosenberg's situation and the difference in how their pay had been handled to Ms. Marcelle. Ms. Thorne asked Ms. Marcelle to schedule a meeting with Mr. Melnkovic to discuss the difference of treatment between her situation and Mr. Rosenberg's situation. Ms. Marcelle said that she would bring this to Mr. Melnkovic's attention, without Ms. Thorne present so Mr. Melnkovic would hear the "bigger picture" and she would discuss Ms. Thorne's pay with Mr. Melnkovic.

33.     Ms. Thorne was then offered a new salary of $120,000 and told to "take it or leave the organization." Ms. Thorne was never given an offer letter, contrary to Amtrak's policy. Under duress, Ms. Thorne accepted the offer and was released from her PIP.

34.     On July 1, 2014, Ms. Thorne began her new role as an Employee Relations Specialist, C1 (demoted to the lowest possible career professional level).

35.     Ms. Thorne began performing the duties of her new role, including on-boarding the new HCBP who took her previous position.

36.     In December 2014, when Amtrak distributed Short Term Incentive ("STI") payments, Ms. Thorne was surprised that she did not receive one. The only reason why STI payments are not made is poor performance ratings. Ms. Thorne therefore asked Ms. Marcelle if she was receiving a poor performance review rating for 2014 and Ms. Marcelle said yes.

37.     When Ms. Thorne and Ms. Marcelle met to discuss Ms. Thorne's 2014 performance review, Ms. Marcelle said that while she was only able to rate Ms. Thorne's performance based on the short amount of time Ms. Thorne had been in the Employee Relations Specialist role, she gave Ms. Thorne a low performance rating because she said that for a few weeks, Ms. Thorne had seemed a little bitter and unhappy. Ms. Marcelle said that Ms. Thorne must have portrayed those feelings to others because others knew that she was not happy with her demotion. Ms. Marcelle said that this was behind them, that Ms. Thorne seemed happier, and that as long as she continued on that course, she would be fine. Ms. Thorne questioned Ms. Marcelle about the fact that because she felt unhappy for a few weeks, she was being punished by receiving a low performance rating for the entire year. Ms. Marcelle did not respond to this.

38.     Ms. Marcelle had never mentioned dissatisfaction with Ms. Thorne during their bi-weekly meetings.  Ms. Thorne expressed her disappointment with this and Ms. Marcelle said that she would try to do better the next year.

39.     Ms. Thorne also expressed concern about receiving two consecutive "1" ratings. Ms. Marcelle said that Ms. Thorne would be fine because those ratings were not performance-related.

40.     Other Amtrak employees who are not African American and Korean received consecutive "1" performance ratings and remained employed at Amtrak.

41.     Ms. Thorne said that she wished to appeal the performance rating.

42.     Around late January 2015, Ms. Thorne complained to Ms. Marcelle about the discriminatory treatment of the Defendant and her desire to file an EEO complaint.

43.     In late January 2015, Ms. Thorne met with one of Amtrak's lead EEO managers and verbally made a complaint of discrimination.  The EEO manager took notes and began the complaint process.

44.     A few days later, Ms. Thorne called the Defendant's EEO manager.  The EEO manager said that she had assigned Ms. Thorne's case to another investigator, the Senior EEO Compliance Specialist, Shazrae Mian ("Ms. Mian").

45.     Ms. Thorne called Ms. Mian to ask about her complaint.  Ms. Thorne gave Ms. Mian a list of witnesses to contact during the investigation into Ms. Thorne's complaint.  Ms. Mian said that she could not discuss the matter with Ms. Thorne and that a decision would be mailed to Ms. Thorne.  The witnesses listed by Ms. Thorne were never contacted.

46.     On February 2, 2015, about one and a half to two weeks after Ms. Thorne filed her EEO complaint, Ms. Marcelle told Ms. Thorne that her employment was terminated effective

immediately. Ms. Thorne asked why and was told that they had lost faith in her ability to do her job. Ms. Thorne asked what she had done to make Ms. Marcelle lose faith in her. Ms. Marcelle's only example was that a few days before, Ms. Thorne had told Ms. Marcelle something that another Employee Relations Specialist had said not to tell her. Ms. Thorne explained that one of the duties of her position was to bring department issues to Ms. Marcelle's attention so it was her duty to speak to Ms. Marcelle about the issue.

47.     Ms. Marcelle then handed Ms. Thorne a termination letter, which stated that Ms. Thorne's employment was terminated for receiving two consecutive "1" ratings and loss of faith in her ability to do her job.

48.     Ms. Thorne had never received any complaints or negative feedback about her performance.

49.     Ms. Thorne was demoted, moved to another department, and had her pay cut, while Caucasian males at Amtrak in similar situations have not had any of their pay taken away. Ms. Thorne's termination was in retaliation for complaining internally of discrimination.

50.     There is a big pay disparity at Amtrak between what men are paid and what women, minorities, and those in protected classes are paid. Amtrak's Legal department told Ms. Thorne that there is an enormous pay disparity at Amtrak with women and that the situation is even worse for women of color. During Ms. Thorne's employment, discussions occurred regarding rectifying the problem but then Amtrak tabled these discussions and said that they would fix it at the performance review phase. Amtrak leadership further stated it should fix this for new hires but they did not.

51.     In early May 2015, Ms. Thorne received a letter from Ms. Mian stating, in part, that "[a] thorough investigation was conducted regarding [your] allegations, which included

interviews with you and Amtrak personnel, as well as a review of pertinent policies.  The investigation did not uncover sufficient evidence in support of your complaint of a Policy violation."

52.     After receiving the letter, Ms. Thorne contacted several of the witnesses whose names she had given to Ms. Mian.  She learned that none of them had been contacted by Ms. Mian or anyone else in the Legal department or EEOC Compliance Department.

53.     Ms. Thorne asked Ms. Mian why the witnesses she provided had not been contacted but Ms. Mian refused to answer.

## COUNT ONE
### DISCRIMINATION IN THE COURSE OF EMPLOYMENT IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT (RACE)
### (against National Railroad Passenger Corporation, d/b/a Amtrak)

54.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

55.     Ms. Thorne was an employee of Amtrak within the meaning of D.C. Code § 2-1401.02(9).

56.     Amtrak is an employer within the meaning of D.C. Code § 2-1401.02(10).

57.     Amtrak, through its agents, officers, and employees, discriminated against Ms. Thorne on account of her race, Asian and African-American, during the course of her employment.  This discrimination was with respect to the terms, conditions, and privileges of Ms. Thorne's employment, in violation of D.C. Code § 2-1402.11.

58.     Rather than remedying the discriminatory working environment, Amtrak engaged in a course of conduct to terminated Ms. Thorne's employment, including after Ms. Thorne complained about the discriminatory treatment, all in violation of D.C. Code § 2-1402.11(a)(1).

59.     As set out above in this Complaint, the acts of discrimination by Amtrak included, but were not limited to, cutting Ms. Thorne's pay, demoting her, and terminating her employment with Amtrak.

60.     Amtrak engaged in the discriminatory conduct set forth above and throughout this Complaint based on Ms. Thorne's race, Asian and African-American, in violation of D.C. Code § 2-1402.11(a)(1).

61.     Ms. Thorne was terminated as a result of the discrimination to which she was subjected.

62.     This discrimination involved and affected the terms, conditions, and privileges of Ms. Thorne's employment in violation of D.C. Code § 2-1402.11.

63.     The actions of Amtrak had the effect and consequence of violating the provisions of the D.C. Human Rights Act, D.C. Code § 2-1401, *et seq.*, in violation of D.C. Code § 2-1402.11.

64.     The discriminatory actions of Amtrak were intentional, were actuated by malice, spite, and ill-will, were willful and wanton, and evinced a conscious and reckless disregard for Ms. Thorne's rights.

65.     As a direct and proximate result of Amtrak's conduct, Ms. Thorne has suffered, and will in the future suffer, great damage including loss of past and future income, loss of employee benefits, loss of career and business opportunities and advancement, past pecuniary expenses, future pecuniary expenses.

66.     As a direct and proximate result of Amtrak's discrimination, Ms. Thorne is entitled to recover damages pursuant to D.C. Code § 2-1403.16, as described in D.C. Code §2-1403.13 and the Code of D.C. Municipal Regulations, Title 4, Chapter 2, 4-200 CDCR, *et seq.*

67.     Due to the character and severity of the actions of Amtrak, and consistent with their intentional discrimination, Ms. Thorne is also entitled to punitive damages.

**COUNT TWO**
**DISCRIMINATION IN THE COURSE OF EMPLOYMENT IN**
**VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
**(GENDER)**
**(against National Railroad Passenger Corporation, d/b/a Amtrak)**

68.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

69.     Ms. Thorne was an employee of Amtrak within the meaning of D.C. Code § 2-1401.02(9).

70.     Amtrak is an employer within the meaning of D.C. Code § 2-1401.02(10).

71.     Amtrak, through its agents, officers, and employees, discriminated against Ms. Thorne on account of her gender, female, during the course of her employment.  This discrimination was with respect to the terms, conditions, and privileges of Ms. Thorne's employment, in violation of D.C. Code § 2-1402.11.

72.     Rather than remedying the discriminatory working environment, Amtrak engaged in a course of conduct to terminated Ms. Thorne's employment, including after Ms. Thorne complained about the discriminatory treatment, all in violation of D.C. Code § 2-1402.11(a)(1).

73.     As set out above in this Complaint, the acts of discrimination by Amtrak included, but were not limited to, cutting Ms. Thorne's pay and terminating her employment with Amtrak.

74.     Amtrak engaged in the discriminatory conduct set forth above and throughout this Complaint based on Ms. Thorne's gender, female, in violation of D.C. Code § 2-1402.11(a)(1).

75.     Ms. Thorne was terminated as a result of the discrimination to which she was subjected.

76.     This discrimination involved and affected the terms, conditions, and privileges of Ms. Thorne's employment in violation of D.C. Code § 2-1402.11.

77.     The actions of Amtrak had the effect and consequence of violating the provisions of the D.C. Human Rights Act, D.C. Code § 2-1401, *et seq.*, in violation of D.C. Code § 2-1402.11.

78.     The discriminatory actions of Amtrak were intentional, were actuated by malice, spite, and ill-will, were willful and wanton, and evinced a conscious and reckless disregard for Ms. Thorne's rights.

79.     As a direct and proximate result of Amtrak's conduct, Ms. Thorne has suffered, and will in the future suffer, great damage including loss of past and future income, loss of employee benefits, loss of career and business opportunities and advancement, past pecuniary expenses, future pecuniary expenses.

80.     As a direct and proximate result of Amtrak's discrimination, Ms. Thorne is entitled to recover damages pursuant to D.C. Code § 2-1403.16, as described in D.C. Code §2-1403.13 and the Code of D.C. Municipal Regulations, Title 4, Chapter 2, 4-200 CDCR, *et seq.*

81.     Due to the character and severity of the actions of Amtrak, and consistent with their intentional discrimination, Ms. Thorne is also entitled to punitive damages.

### COUNT THREE
### RETALIATION IN THE COURSE OF EMPLOYMENT
### IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHT ACT
### (against National Railroad Passenger Corporation, d/b/a Amtrak)

82.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

83.     Amtrak retaliated against Ms. Thorne because she complained about discriminatory treatment.

84.     Such retaliation was with respect to the terms, conditions, and privileges of Ms. Thorne's employment at Amtrak, creating a hostile and intolerable work environment in violation of D.C. Code § 2-1402.11.

85.     Rather than remedying its discriminatory working environment, Amtrak engaged in a series of retaliatory acts against Ms. Thorne because she complained about discriminatory treatment, all in violation of D.C. Code § 2-1402.61.

86.     As set out above in this Complaint, Amtrak's acts of retaliation included, but were not limited to, terminating Ms. Thorne's employment with Amtrak.

87.     Amtrak engaged in the conduct set forth above and throughout this Complaint in furtherance of retaliation against Ms. Thorne for having engaged in protected activity, that is, complaining about discriminatory treatment, in violation of D.C. Code § 32-1363.

88.     Ms. Thorne was terminated as a result of the discriminatory and retaliatory treatment she suffered and as a further act of retaliation.

89.     This retaliation involved and affected the terms, conditions, and privileges of Ms. Thorne's employment at Amtrak and created a hostile and intolerable environment in violation of D.C. Code § 2-1402.11.

90.     Amtrak's actions had the effect and consequence of violating the provisions of the D.C. Human Rights Act, D.C. Code § 2-1401.1, *et seq.*, in violation of D.C. Code § 2-1402.68.

91.     Amtrak's discriminatory and retaliatory actions were intentional, were actuated by malice, spite, and ill-will, were willful and wanton, and evinced a conscious and reckless disregard for Ms. Thorne's rights.

92.     As a direct and proximate result of Amtrak's conduct, Ms. Thorne has suffered, and will in the future suffer, great damage including loss of past and future income, loss of

employee benefits, loss of career and business opportunities and advancement, past pecuniary expenses, future pecuniary expenses.

93.     As a direct and proximate result of Amtrak's retaliation, Ms. Thorne is entitled to recover damages pursuant to D.C. Code § 2-1403.16, as described in D.C. Code §2-1403.13 and the Code of D.C. Municipal Regulations, Title 4, Chapter 2, 4-200 CDCR, *et seq.*

94.     Due to the character and severity of Amtrak's actions, and consistent with the intentional discrimination and retaliation by Amtrak, Ms. Thorne is also entitled to punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff JUANITA THORNE requests that this Court enter judgment in her favor, and against the Defendant, NATIONAL RAILROAD PASSENGER CORPORATION, D/B/A AMTRAK, on the above Counts as follows:

a) Award Ms. Thorne compensatory damages on each of the above-stated Counts in amounts to be decided by a jury; and in addition

b) Award Ms. Thorne punitive and exemplary damages on each Count in amounts to be decided by a jury; and in addition

c) Award Ms. Thorne reasonable attorneys' fees and the costs of this action, including expert witness fees; and in addition

d) Award Ms. Thorne reinstatement with all back pay and benefits in amounts to be decided by the jury; and in addition;

e) Declare that Defendant has violated the District of Columbia Human Rights Act; and in addition

f) Enjoin the Defendant from further violations of the District of Columbia Human Rights Act; and in addition

g) Award Ms. Thorne such other and further relief as may be appropriate under the circumstances.

<h2 style="text-align:center">JURY DEMAND</h2>

**PLAINTIFF JUANITA THORNE DEMANDS A TRIAL BY JURY.**

February 1, 2016                              Respectfully submitted,


_/s/_____
Peter C. Cohen
D.C. Bar No. 413247
pcohen@cbcblaw.com
CHARLSON BREDEHOFT
 COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Plaintiff, Juanita Thorne*

16